[File No. 7106]

MURRAY A. BALDWIN, Appellant, v. BOARD OF EDUCATION of the City of Fargo, a body corporate, Respondent.

(33 NW2d 473)

Opinion filed August 2, 1948

*Harold W. Bangert* and *Robert W. Rovelstad,* for appellant.

*J. F. X. Conmy,* for respondent.

54

CHRISTIANSON, Ch. J.,   The plaintiff, a taxpayer and resident of the city of Fargo, seeks to enjoin the defendant from offering for sale, selling, executing, or delivering certain bonds for the purpose of obtaining funds to erect, enlarge, improve, furnish and equip school buildings in the territory under the jurisdiction of the defendant. The sole question in controversy is whether the defendant is a public corporation, having a legal entity separate and distinct from the city of Fargo, or is merely a board or department of the government of the city of Fargo. It is conceded that if the defendant is a separate and distinct public corporation, that is, a school corporation separate and distinct from the municipal corporation, the city of Fargo, and has the power to incur indebtedness up to the limit fixed for such school corporation under the laws of the state that then it has authority to issue the bonds in question and the indebtedness created thereby will not be in excess of the legal debt limit of the defendant. If, on the other hand, the defendant, the Board of

Education of the City of Fargo, is merely a board or department of the city of Fargo so that the bonds which the defendant is about to issue and sell will be in fact and in law the bonds of the city of Fargo, then the indebtedness created will exceed the debt limit of the city.

The question thus posed involves legislation originating before statehood and the construction that has been placed thereon for more than 60 years. An examination of the applicable statutes convinces us that the defendant is a public corporation wholly separate from the city of Fargo and that while the defendant corporation operates within the same territory as the city of Fargo it is in no sense a board or department of the city of Fargo.

The defendant, the Board of Education of the City of Fargo, was created by act of the legislature of the Territory of Dakota approved March 4, 1885. See 1925 Supplement to ND Comp Laws 1913, § 1321a1–1321a25; ND Rev Code 1943, Chapter 15–51. The act provided: "The board of education shall be a body corporate in relation to all the powers and duties conferred upon them by this act, to be styled "The Board of Education of the City of Fargo" and as such shall have power to sue and be sued, to contract and be contracted with, and shall possess all the powers usual and incident to bodies corporate as shall be herein given, and shall procure and use a common seal. A majority of the members of said board shall constitute a quorum for the transaction of business." ND Rev Code 1943, 15–5107; 1925 Supp § 1321a7.

The act provided that the members of the Board of Education of the City of Fargo shall be elected at an election to be held each year, ND Rev Code 1943, § 15–5101, 1925 Supp § 1321a1, that the Board is authorized to fill vacancies until the next regular election, (ND Rev Code 1943, § 15–5105, 1925 Supp § 1321 a5), and is authorized to elect a secretary and fix his compensation, ND Rev Code 1943, § 15–5110, 1925 Supp § 1321a10.

The act provided:

"The said Board of Education shall have power, and it shall be their duty to levy and raise from time to time by tax, such

sums as may be determined by them to be necessary and proper for any or all the following purposes: 1st. To purchase, exchange, lease or improve sites for school houses. 2nd. To build, purchase, lease, enlarge, alter, improve and repair school houses and their outhouses and appurtenances. 3rd. To procure, exchange, improve, and repair school apparatus, books, furniture and appendages, but the powers herein granted shall not be deemed to authorize the furnishing of class or text books to any scholar whose parent or guardian is able to furnish the same. 4th. To provide fuel and defray the contingent expenses of the board including the compensation of the secretary. 5th. To pay teachers wages after the application of public moneys, which may by law be appropriated and provided for that purpose." ND Rev Code 1943, § 15–5111; 1925 Supp § 1321a11.

The act further provided:

"The treasurer of said city shall serve as treasurer of said Board of Education without compensation and shall give bonds to such Board of Education in such sums and with such conditions and sureties as they from time to time shall require in order to insure the safekeeping of the school funds, which shall be in addition to his other bonds, and the said treasurer and his sureties upon such bonds shall be accountable to the board for school moneys that came into his hands . . . ." ND Rev Code 1943, § 15–5115, 1925 Supp § 1321a16.

It further provided:

"The treasurer shall pay out the moneys authorized by this act and received by him upon warrants drawn by the president and countersigned by the secretary and attested by the seal of the Board of Education." ND Rev Code 1943, § 15–5116, 1925 Supp § 1321a17.

The foregoing provisions have remained in force without any material change since their original enactment.

The act authorized and empowered the Board of Education to issue bonds for school purposes aggregating not to exceed $80,-000. There was no requirement that the issuance of such bonds be authorized by the voters at an election. (Act approved March

4, 1885, § 14.) The Constitution of North Dakota (adopted in 1889) provided: "All laws now in force in the Territory of Dakota, which are not repugnant to this Constitution, shall remain in force until they expire by their own limitation or be altered or repealed." ND Const Schedule, § 2. Accordingly, the act of the Territorial Legislature approved March 4, 1885, became a law of the State of North Dakota and has remained in force as originally enacted, with the exception of certain provisions subsequently repealed or amended. However, the special act which created the defendant, a body corporate, did not appear in any volume of the laws either of the Territory of Dakota or of the State of North Dakota until it was embodied as §§1321a1 to 1321a25 inclusive of the 1925 Supplement to the 1913 Compiled Laws of North Dakota. The Act of March 4, 1885, creating the Board of Education of the City of Fargo was amended by the Legislative Assembly of the State of North Dakota by Chapter 125, Laws 1915. 1925 Supp § 1321a14. By such amendatory act certain changes were made in the section (§ 14) relating to the issuance of bonds. The Act of 1885 empowered and authorized the Board of Education to issue bonds not to exceed in all $80,000, without submission of the question of issuance of such bonds to, and the approval thereof by, the electors of the school corporation. In said Chapter 125, Laws 1915, (1925) Supp § 1321a14), the provisions of § 14 of the Act of March 4, 1885, were amended so as to provide:

"that at no time shall the aggregate amount of such bonds, including all other indebtedness, exceed fifty mills on the dollar of valuation of the taxable property of such *district*, to be determined by the last city assessment; provided, further, that the board of education shall at no time issue and there shall not be outstanding, bonds in the aggregate in an amount to exceed one hundred and sixty thousand dollars unless the issuance of bonds in excess of that amount be first authorized by *the voters of the district* as hereinafter prescribed. . . ."

"Before issuing bonds in excess of the aggregate amount of one hundred and sixty thousand dollars, the board of education shall call an election for the purpose of submitting to *the voters*

*of the school district* the question of issuing such bonds, notice of which shall be given in the manner prescribed by law . . . ."

"if a majority of the votes cast upon that question is for issuing bonds such bonds shall be issued and negotiated by the board of education, otherwise such bonds shall not be issued, nor shall the question be again submitted for one year thereafter except for a different amount and then only upon the written petition of *a majority of the voters of the district*." (Italics supplied.) Chapter 125, Laws 1915, (1925 Supp § 1321a14).

In 1927 the legislature adopted a comprehensive measure relating to the issuance of bonds by municipalities including common school districts, independent school districts, and special school districts. Laws 1927, Chapter 196. That measure repealed then existing statutes relating to the issuance of bonds by all school corporations and specifically repealed § 1321a14 of the 1925 Supplement relating to the issuance of bonds by the Board of Education of the City of Fargo. All bonds issued by the defendant subsequent to July 1, 1927, have been issued pursuant to the provisions of said Chapter 196, Laws 1927.

Upon the trial it was stipulated as a fact that if the defendant, the Board of Education of the City of Fargo, constitutes a school district, that is, if it constitutes a public corporation separate and distinct from the City of Fargo and is not merely a department or board of the city, that then all proceedings had and caused to be taken with respect to the bond issue involved in this action were in all respects had conformable to the law.

It was further stipulated:—

"That the Board of Education of the City of Fargo has, since March 4, 1885, conducted the government of public schools in the City of Fargo on the basis that said defendant operating within the territory included in the corporate limits of said City of Fargo, North Dakota, constituted a duly organized school district.

"That continuously since March 4, 1885, the defendant has exercised its power and duty to levy taxes for school purposes on the property within the corporate limits of the City of Fargo

on the basis that such property and territory constituted the school district under its supervision.

"That the Auditor of Cass County, North Dakota, has, since the organization of the county, carried and listed on the county records the property within the corporate limits of the City of Fargo as being and constituting Cass County School District No. 1, and further that since the organization of the North Dakota State Equalization Fund the defendant and the territory under its jurisdiction, that is the territory within the corporate limits of the City of Fargo, has received state aid from the monies apportioned and paid out through said State Equalization Fund in the same manner as other school districts within the state of North Dakota."

It was further stipulated that the defendant at various times has issued its bonds for school purposes, among others, as follows: In 1911, bonds in the amount of $55,000 to finance the construction of a school building in the City of Fargo. In 1915, bonds in the amount of $50,000 to finance the construction of another school building in the City of Fargo. In 1917, bonds in the amount of $30,000 to finance the construction of a school building in the City of Fargo. In 1918, bonds in the amount of $240,000 to finance the construction of the Central High School in the City of Fargo. In 1923, bonds in the amount of $200,000 to provide funds for the operation of the schools. In 1926, bonds in the amount of $200,000 to finance the construction of certain school buildings in Fargo. In 1926, $25,000 to purchase a site for a school building. In 1930, bonds in the amount of $150,-000 to finance the construction of school buildings in the City of Fargo.

"That the indebtedness created by the various bond issues aforesaid has been and is being paid by a levy (made by the defendant, The Board of Education of the City of Fargo), upon the property within the corporate limits within the City of Fargo, North Dakota, on the basis that such property and territory constitutes the school district under the supervision and control of the defendant."

It was further stipulated that the proposed bond issue in-

volved in this action is within the authorized debt limit of the defendant if the defendant is not merely a board or department of the City of Fargo, but is a public corporation separate and distinct from the City of Fargo.

"That the Board of Education of the City of Fargo and the territory within the corporate limits of the City of Fargo has at all times prior hereto been commonly regarded by the residents of said city, and members of said Board of Education, and the city and county officials, as being and constituting an organized and existing school district."

We are entirely satisfied that when the Legislature of the Territory of Dakota enacted the statute approved March 4, 1885, it was the intention of the lawmakers to create a public corporation wholly separate and distinct from the municipal corporation known as the city of Fargo; and that has been the construction placed upon that law since its enactment by all officials who have been charged with the duty of construing and applying the law and that is the construction that has been placed upon it by the Legislature and by the courts.

The act approved March 4, 1885, was not an unusual one. It followed the pattern that had been set by the Territorial Legislature not only with respect to special laws creating boards of education or school corporations in particular cities but also with respect to general laws that were made applicable to school corporations within cities, towns and villages. See Session Laws of the Territory of Dakota, 1881, Chapters 41 and 60. The pattern set by the Territorial Legislature was also followed by the first legislative assembly of the state and succeeding legislative assemblies. Thus, in 1890 the Legislative Assembly of North Dakota enacted a comprehensive act providing for a uniform system of free public schools throughout the state. Laws 1890, Chapter 62. By such act the Legislative Assembly provided for the organization of special school districts, under general law. Laws 1890, Chapter 62, §§ 169–207. Section 171 of such act provided:

"Every such special district shall be a body corporate for

school purposes by the name of 'the board of education of the city, town or village (as the case may be) of . . . (here insert the corporate name of the city, town or village) of the State of North Dakota,' and shall possess all the powers and duties usual to corporations for public purposes, or conferred upon it by this act or that may hereafter be conferred upon it by law; and in such name it may sue and be sued, contract and be contracted with, and hold and convey such real and personal property as shall come into its possession by will or otherwise; and it shall procure and keep a corporate seal."

The provisions of this section have been continued as the law of this state without substantial change since their enactment. Rev Code 1895, § 787; Rev Code 1899, § 787; Rev Code 1905, § 950; Laws 1911, Chap 266, § 134; Comp Laws 1913, § 1241; ND Rev Code 1943, § 15-2702.

Section 187 of such act provided:

"The treasurer of any city, town or village comprising a special district shall be treasurer of the board of education thereof." (Rev Code 1895, § 803; Rev Code 1899, § 803; Rev Code 1905, § 966; Laws 1911, Chap 266, § 147; Laws 1913, Chap 256; Comp Laws 1913, §§ 1248, 1254).

The same Legislative Assembly enacted another law which provided that any city theretofore organized for school purposes under special laws and provided with a board of education might become incorporated as an independent school district under the provisions of the act. Laws 1890, Chapter 64. This latter act provided for the election of a board of education for such school district and further provided that the board of education elected for such school district "shall be a body corporate in relation to all the powers and duties conferred upon them by this act, to be styled 'The Board of Education of Independent School District, City of . . . (here insert the name of city)' and as such shall have powers to sue and be sued, to contract and be contracted with, and shall possess all the powers usual and incident to such bodies corporate, and as shall be herein given, and shall procure and keep a common seal." Laws 1890, Chapter 64, § 8. Such

.act also made the city treasurer the treasurer of the school district. Laws 1890, Chap 64, §§ 16, 17, 18 and 25. These provisions of Laws 1890, Chap 64, have remained part of the laws of the state without substantial change since their enactment. See ND Rev Code 1943, §§ 15–3201, 3210, 3214.

In 1881 the Territorial Legislature also enacted a special law providing for the government of schools in the city of Grand Forks. Special Laws, Territory of Dakota, 1881, Chapter 60. Such law provided that the territory within school district number one of Grand Forks county (which included the territory within the limits of the City of Grand Forks) be established as an independent school district and provided that a board of education be elected at the annual election held for city officials for the City of Grand Forks. Special Laws, Territory of Dakota, 1881, Chapter 60, Section 2. The powers of the Board of Education of the City of Grand Forks as fixed in that act were almost identical with the powers conferred upon the Board of Education of the City of Fargo by the act approved March 4, 1885. (Compare § 16, Chapter 60, Special Laws, Territory of Dakota, 1881, with § 18 of Act approved March 4, 1885; 1925 Supp § 1321a18). The power to levy taxes and to issue bonds vested in the board of education were in all substantial respects similar in the two acts. (Compare §§ 9 and 12, Chapter 60, Special Laws, Territory of Dakota, 1881, with §§ 11 and 14 of Act approved March 4, 1885; 1925 Supp § 1321a11 and § 1321a14).

Said Chapter 60, Special Laws, 1881, provided that the treasurer of the city of Grand Forks should be treasurer of the school district; that the moneys of the district should be paid over to the treasurer of the city of Grand Forks by the county treasurer, (Chapter 60, § 13), and that the treasurer of the city should give bonds to the board of education in such sums and with such conditions and sureties as such board should from time to time require in order to insure the safekeeping of school funds and that the treasurer and his sureties upon such bonds should be accountable to such board for the school moneys that came into his hands. (Chapter 60, § 14). Said Chapter 60 further provided:

"The title of the school houses, lots, furniture, books, apparatus and appurtenances, and all other property belonging to the school district number one of Grand Forks county, and all such property in this act mentioned shall be vested in the city of Grand Forks for the use of schools, and the same while used or appropriated for school purposes shall not be levied upon or sold by virtue of any warrant or execution or other process, nor be subject to any judgment lien, nor be subject to taxation for any purpose whatever; and the said city in its corporate capacity shall be able to take, hold and dispose of any real or personal estate transferred to it by gift, grant, bequest or devise for the use of common schools of said city, whether the same be transferred in terms to said city, by its proper style, or by designations, or to any person or persons or body for the use of said schools." Session Laws, Territory of Dakota, 1881, Chapter 60, § 20.

In Vallelly & Brockhoff v. Park Comrs. 16 ND 25, 111 NW 615, 15 LRA NS 61, the same contention was advanced with respect to the bonded indebtedness that had been contracted by the board of education for the school district in Grand Forks as that advanced by the plaintiff here with respect to the bonded indebtedness of the defendant Board of Education of the City of Fargo. In other words, in that case it was contended that the bonded indebtedness of the school district constituted indebtedness of the city of Grand Forks and must be included in computing the city's indebtedness. In disposing of that contention, this Court said:

"It is also claimed that the bonded indebtedness of the independent school district of the city of Grand Forks should be included in the computation of the city's indebtedness. The boundaries of this school district are coterminous with the territory embraced in the city. The functions of the school district are entirely separate from those of the city. The scope of the powers of the school district are outside that of the city municipal government proper. It acts independently under express statutory authority, and is in no sense an agent of the city. The indebtedness inhibited by the constitution is that contracted by the

city for its own purposes, and does not refer to the indebtedness of the school district, an independent and distinct corporation organized for a special purpose not within the province of the city government proper." 16 ND at p 29, 111 NW at p 616.

This statement is directly applicable in this case, and is in harmony with views expressed by most courts in dealing with similar or analogous questions. See Board of Education v. Upham, 357 Ill 263, 191 NE 876, 94 ALR 813, and authorities collated in note in 94 ALR commencing at page 818.

In Anderson v. Fargo, 48 ND 722, 186 NW 378, this Court had occasion to consider the question whether the Board of Education of the City of Fargo was a department or agency of the city or a corporate entity separate and apart from the municipal corporation, the city of Fargo. That was an action brought by a widow against the city of Fargo to recover damages on account of the death of her son, a boy 13 years of age, alleged to have been caused by the negligence of the city of Fargo in maintaining certain playgrounds and playground equipment at the Agassiz School in Fargo. The City of Fargo contended that the school grounds and playgrounds and the equipment thereon were wholly under the control of the defendant, the Board of Education of the City of Fargo, a separate and distinct corporation, exercising its own corporate powers and that consequently there was no liability on the part of the city of Fargo for the alleged injury. In the opinion in that case this Court said:

"It will be observed that the plaintiff has pleaded the act of March 4, 1885, providing for a board of education for the city of Fargo, and the amendatory act thereof, approved February 2, 1915. If it should appear from these that the board of education of the city of Fargo is a distinct corporate entity from the municipal corporation of the city of Fargo, and that the former has control and dominion over all the schools of Fargo, including the school buildings, school grounds, and school playgrounds, all school apparatus, the right to buy or sell school property, the right to issue bonds for school purposes, and the right to sue and be sued, and this free and clear from any right of interference by the city of Fargo, then we think that it must

be clear that, if the plaintiff has any cause of action, it is not one against the city of Fargo; we think the complaint on its face so shows, and hence it does not state facts sufficient to constitute a cause of action. Ample support of this conclusion is contained in the act providing for the board of education. Section 7 thereof is as follows:

" 'The board of education shall be a body corporate in relation to all the powers and duties conferred upon them by this act, to be styled "the board of education of the city of Fargo," and, as such, shall have power to sue and be sued, to contract and be contracted with, and shall possess all the powers usual and incident to bodies corporate, as shall herein be given, and shall procure and use a common seal. . . .'

"The board has the power to purchase, exchange, lease or improve sites for schoolhouses; to build, purchase, lease, enlarge, alter, improve and repair schoolhouses and their out houses and appurtenances; . . . to provide fuel and defray the contingent expenses of the board, including the compensation of the secretary; to pay teachers' wages, . . . . It also has the power to levy a tax in such sums as may be determined by them to be necessary and proper to accomplish any of the foregoing purposes.

"Under section 14, as amended by chap 125 of Session Laws 1915, the board is authorized, . . . to issue the bonds of the city in the manner and under the conditions specified in the act.

"Under section 18, the board is authorized to establish and maintain as many schools in the city as they deem requisite and expedient. . . .

"We think it is clear not only from the provisions of section 7, supra, but from the provisions as well of other sections to which reference above has been made, that the board of education of the city of Fargo is a body corporate, and as such is exclusively charged with the control and management of all the school property of Fargo, and has full and complete dominion over it, and power to deal with it as hereinbefore mentioned, and, this being true, if plaintiff has any cause of action by reason of the matter stated in her complaint, it is not against the city of

Fargo, but against the board of education, and we think the complaint so shows." 48 ND at pp 727–729, 186 NW at pp 379, 380.

What was thus said in Anderson v. Fargo (ND) supra, is applicable to and seems decisive of the main question in this case. It is argued on behalf of the plaintiff, however, that the decision in the Anderson case is not controlling. It is asserted that that decision did not consider the provision in the act approved March 4, 1885 that the city treasurer should serve as treasurer of the board of education and it is argued that the fact that the legislature provided that the city treasurer should serve as treasurer of the defendant, the board of education, tends to show that the legislature intended that the board of education should be merely a department of the city government.

This contention is without merit. Board of Education v. Upham, 357 Ill 263, 191 NE 876, 94 ALR 813, supra. As has been noted the Territorial Legislature frequently or generally adopted the plan of making the city treasurer ex officio treasurer of a special or independent school district established within and embracing the same territory as that embraced within the city and this plan was also continued by legislative enactments subsequent to statehood.

Under the terms of the act approved March 4, 1885, a person serving as treasurer of the city of Fargo is ex officio treasurer of the defendant, Board of Education; but in serving as treasurer of the school corporation and receiving and handling school funds he does not serve as treasurer of the city. He serves as treasurer of the school corporation, his responsibility is to the school corporation alone and the bond which he gives to insure the safekeeping of school funds runs to the board of education and does not run to the city of Fargo. The fact that the legislature provided that the city treasurer should serve as treasurer of the school corporation is of no consequence in determining whether the board of education has a separate and distinct corporate existence. Board of Education v. Upham (Ill) supra.

If the contention of the plaintiff is correct then the anomalous situation exists that the municipal corporation, the city of Fargo, has two separate and distinct governmental boards or bodies,

namely, the city commission and the Board of Education, each of which may incur indebtedness for the city up to the full amount of the constitutional debt limit of the city. In other words, if this contention is correct, then the defendant, Board of Education, may incur indebtedness and issue bonds of the city up to the full amount of the constitutional debt limit and leave the city commission, the governing body of the city, without any basis for incurring debt and issuing bonds to raise funds to carry on the functions of the city proper; or the city commission may incur indebtedness and issue bonds for the full amount of the constitutional debt limit and leave the defendant, the school corporation, without power to incur indebtedness or issue bonds for necessary school purposes. Obviously any such arrangement would be productive of strife and confusion and would be contrary to well-established principles of sound municipal government. To make the amount of bonds which the city commission might issue conditioned upon the indebtedness incurred by the board of education or vice versa "would go far to hamper the activities of each. The possibilities in this regard do not need to be dwelt on." Russell v. Middletown City School Dist. 101 Conn 249, 263, 125 A 641, 646.

The Constitution of North Dakota required the Legislative Assembly to provide "for a uniform system of free public schools throughout the state." ND Const §§ 147, 148.

"Being charged with the duty of establishing a system of public education, the legislature naturally must employ agencies to conduct the schools, and delegate to them many of its powers, the most usual form being what are commonly known as school districts, that is, local territorial divisions with a very large degree of power over school affairs within their respective boundaries. The school district is purely a creation of the legislature, either by express law or by a general law under which it is formed." 47 Am Jur 304, 305, Schools, § 12.

The Constitution recognized school districts as political subdivisions, which might incur indebtedness and issue bonds. It provided:

"Sec. 183. The debt of any county, township, city, town,

school district or any other political subdivision, shall never exceed five (5) per centum upon the assessed value of the taxable property therein; . . . ."

"Sec. 184. Any city, county, township, town, school district or any other political subdivision incurring indebtedness shall, at or before the time of so doing, provide for the collection of an annual tax sufficient to pay the interest and also the principal thereof when due, . . . ."
These provisions have remained without change.

The words "school district" constitute a generic term conveniently used to designate the territory that has been organized as a political or civil subdivision of the state for the purpose of the administration, support and maintenance of the public schools in such territory. Falcone v. Board of Education, 17 NJ Misc 75, 4 A2d 687, 689; 56 CJ pp 169, 170, § 11; see also definition of "district" Funk and Wagnall's New Standard Dictionary. The term as employed in §§ 183 and 184 of the Constitution means a local administrative authority,—a public and quasi municipal corporation or political subdivision of the state, —with fixed territorial limits, created pursuant to law as part of the public school system for the maintenance, support and administration of the public schools within its territory in accordance with the laws of the state, and invested for these purposes with certain powers of local self government, and of local taxation, and administered by a board of officers elected by the voters of the district. Black's Law Dictionary 3d ed, "school district," p 1585; 47 Am Jur 304, 305, Schools, § 12; 56 CJ p 193, §§ 45, 46; see definition of "school district", Webster's New International Dictionary, p 2237.

The Act approved March 4, 1885, did not in terms declare that the territory set off and defined thereby should constitute a "school district". But the act did create a civil or political subdivision such as is commonly denominated a "school district." The legislature specifically set off and defined a portion of territory as a division or unit to be administered as a part of the public school system by a board of education which the legislature provided should constitute a body corporate for the purpose

of performing the duties prescribed in the act in relation to the administration of public schools in the territory or district set off and defined in the act. Black's Law Dictionary 3d ed, "school district", p 1585; 47 Am Jur 304, 305, Schools, § 12; 56 CJ p 169, § 11, p 193, §§ 45, 46; Funk and Wagnall's New Standard Dictionary of the English Language, "district," p 735; Webster's New International Dictionary, "school district," p 2237. The unit so established as a local administrative authority of the public school system was in existence when the Constitution was adopted and the state government established and it was continued in force without interruption by virtue of the provisions of the state Constitution. ND Const, (Schedule, § 2). The local administrative unit so established by the territorial legislature and continued in force without interruption under the laws of the state was, we think, a school district or political subdivision within the purview of the provisions of §§ 183 and 184 of the Constitution. Charles B. Saxon, Inc. v. Board of Education, 168 Misc 209, 4 NYS2d 757; State Nat. Bank v. Clayton, 22 NM 630, 167 P 20. And, as has been noted, it has been so considered and recognized by the people generally and by the public officers of the state, the county, and the city, as well as by the Legislative Assembly and by this Court.

Thus, as has been noted above, in Chapter 125, Laws 1915, the legislature in providing for an election for the issuance of bonds by the defendant, the Board of Education of the City of Fargo, stated that bonds exceeding in the aggregate $160,000 might not be issued unless the issuance of bonds in excess of that amount be first authorized by "the voters of the *district.*" Again, in such act, it was provided that the board of education should call an election for the purpose of submitting "to the voters of the school *district* the question of issuing such bonds"; and again that if the proposal to issue bonds were not approved by the electors that then the question should not be again submitted for one year thereafter except for a different amount and then only upon the written petition of the "majority of the voters of the *district.*"

In Weeks v. Hetland, 52 ND 351, 202 NW 807, this Court re-

peatedly referred to "the school district" of the city of Fargo; and in State ex rel. Mannes v. Alquist, 59 ND 762, 231 NW 952, 72 ALR 494, this Court made like reference and stated that "the school district of the city of Fargo . . . is a special school district."

The city of Fargo and the defendant, the Board of Education of the City of Fargo, comprise the same area and the same population, but they are corporate bodies, independent of each other, each performing different functions, discharging different duties, and exercising different powers. The defendant, the Board of Education of the City of Fargo, administers the public schools, provides and controls all properties utilized in the operation, and levies the taxes for the maintenance, of, such schools. The city of Fargo has nothing to do with these activities and can exercise no control over them. Each of these municipalities has its bonding powers as prescribed by law and each has its own debt limit under the Constitution. In determining the indebtedness of the city of Fargo its indebtedness alone is the basis to which the constitutional limit must be applied and in determining the indebtedness of the defendant, Board of Education of the City of Fargo, and its power to incur indebtedness and issue bonds, the indebtedness incurred by the defendant, the Board of Education, alone is the amount of indebtedness to be computed. Each of these municipalities is authorized to incur indebtedness up to the limit prescribed by § 183 of the Constitution and its power to incur such indebtedness is not affected by the indebtedness of the other municipality whose boundaries are conterminous. Vallelly & Brockhoff v. Park Comrs. 16 ND 25, 111 NW 615, 15 LRA NS 61, supra; Board of Education v. Upham, 357 Ill 263, 191 NE 876, 94 ALR 813, supra; Hyde v. Ewert, 16 SD 133, 91 NW 474; Lippert v. School Dist. 187 Wis 154, 203 NW 940; Russell v. Middletown City School Dist. 101 Conn. 249, 125 A 641, supra. See also Wood v. Calaveras County, 164 Cal 398, 129 P 283, 285.

We hold that the defendant, the Board of Education of the City of Fargo, is a body corporate; that it has its own limit of indebtedness under the Constitution which is not affected by the

indebtedness of the City of Fargo and that the proposed bond issue will not create an indebtedness in excess of § 183 of the Constitution.

The judgment appealed from is affirmed.

NUESSLE and BURKE, JJ., and GRIMSON and SWENSON, District Judges, concur.

BURR and MORRIS, JJ., did not participate.