Richard BLAIR, Plaintiff and Appellant,

v.

The CITY OF FARGO, a Municipal Corporation, and Board of Education of the City of Fargo, a Body Corporate, Defendants and Respondents.

Civ. No. 8546.

Supreme Court of North Dakota.

Sept. 18, 1969.

Rehearing Denied Nov. 3, 1969.

---

Stokes, Vaaler, Gillig, Warcup & Woutat, Grand Forks, for plaintiff and appellant.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for respondent Board of Education of the City of Fargo.

Garylle B. Stewart, Asst. City Atty., Fargo, for respondent The City of Fargo.

STRUTZ, Judge, on reassignment.

In 1963, the electors of the Fargo School District, which embraces the same area as the City of Fargo, approved a bond issue for $2,150,000 for the purpose of erecting, enlarging, improving, and acquiring sites for furnishing and equipping high school facilities in the District. Prior to the election, a citizens committee had issued and circulated a publicity pamphlet which urged the people to approve the bond issue, and stated that, if approved, $175,000 of the moneys realized from such bond issue would be used for modernizing and enlarging the library and cafeteria and providing additional classroom space and science laboratories at Fargo Central High School, which at the time was the only high school in the district. The balance of the moneys from such bond issue was to be used for building a new high school on the north side of the city. The ballot which was submitted to the voters, however, did not specify that any part of the moneys would be used to remodel Central High School.

The bond issue was approved by the voters of the district. However, the suggested remodeling of Central High School never was done, and the entire amount raised by the issue was used in the construction of a new high school in the district known as North High School.

After North High School had been built, it became apparent that Central High was very inadequate in many ways, and the deficiencies in the building and its location became a matter of serious concern to the Board of Education. The building itself had many deficiencies which made it undesirable for continued use as a high school. The library, the science facilities, the cafeteria, the gymnasium, and the auditorium all required improvements and remodeling if they were to be continued in use. The area in which the school was located had become largely a commercial area, and the school population in the immediate area was dwindling. Furthermore, there was a complete lack of parking facilities available for use of persons teaching in or attending the school.

For the above reasons, the Board of Education hired Dr. Paul W. Seagers of the University of Indiana, an expert on school construction, to examine not only Central High School but the entire Fargo school system for the purpose of making recommendations, particularly as to what should be done with the facilities at Central High. He arrived in Fargo at about the time that a fire partially destroyed Central High. Following his examination and investigation of the entire Fargo school system, this expert recommended that the building which housed Central High not be

repaired and restored, but that it be abandoned and that a new structure be built to replace it at some location in the south part of the city. He stated that his recommendations would have been the same even if no fire had occurred in Central High.

In February of 1966, which was prior to the fire, the Fargo Board of Education had secured an estimate for the remodeling of the Central High building. This estimate was in the sum of $359,625. With certain proposed additions and changes which the Board had considered, the estimate for such remodeling was between $400,000 and $500,000. However, even the highest figure made no provision for adequate parking at the school.

Thereafter, a bond issue for the construction of a new high school facility, to be located in the south part of the city, was submitted to the voters of the school district. This bond issue was in the amount of $3,200,000. The bond issue was approved by the voters.

On April 19, 1966, subsequent to the securing of the bids above mentioned, a fire partially destroyed Central High. Thereafter, the school board secured estimates of the cost to replace the facility in the same structural condition as before the fire, and it received an estimate of $860,396.10. This estimate, however, did not include the cost of any equipment nor did it provide for any remodeling or alteration of the physical structure, which the Board had deemed advisable and necessary. It merely provided for a restoration of the building to its former condition.

Central High School is located immediately across the street from the Cass County courthouse. After the approval of the bond issue for the construction of South High, the Board of Education entered into an agreement, after calling for bids, to sell the old Central High building and grounds to Cass County, which had submitted the high bid.

The plaintiff thereupon commenced this action as a citizen and taxpayer, for himself and for all others similarly situated, seeking to enjoin the sale of Central High to the County. The plaintiff contends that the property upon which Central High is situated was conveyed to the City of Fargo specifically for school purposes, and that it therefore may not legally be sold for any other purpose. The district court denied the injunction and dismissed plaintiff's complaint, and plaintiff appeals to this court from the judgment entered.

Plaintiff raises three issues on this appeal:

1. The only body that has the legal right to sell the property in question is the City of Fargo.

2. The Fargo School Board is without authority to sell the property in question.

3. Even if the Fargo School Board might have the power to sell, the sale it is contemplating is an abuse of such power.

It will be noted that the three issues raised by the plaintiff are very closely related. If the only body that has the legal right to sell the property in question is the City of Fargo, then obviously the Board of Education of the City of Fargo is without authority to sell it. If we determine that the School Board does have the power to sell, then we must determine whether the action of the Board in this case constituted an abuse of its power.

The defendant Board of Education of the City of Fargo was created by an Act of the Legislative Assembly of the Territory of Dakota, approved March 4, 1885. Council Bill 117, now embodied in Chapter 15–51, N.D.C.C. The Act creating the Board of Education of the City of Fargo provided:

"The board of education shall be a body corporate in relation to all the powers and duties conferred upon them by this act, to be styled 'The Board of Education of the City of Fargo' and as such shall have power to sue and be sued, to contract and be contracted with, and shall possess all the powers usual and incident to bodies corporate as shall be

herein given, and shall procure and use a common seal. A majority of the members of said board shall constitute a quorum for the transaction of business." Sec. 15–51–07, N.D.C.C.

The Act further provided that the Board should have the power, among other things, to purchase, exchange, lease, or improve sites for schoolhouses; to build, purchase, lease, enlarge, alter, improve, and repair schoolhouses; and to procure, exchange, improve, and repair school apparatus, furniture, and appendages. Sec. 15–51–11, N.D.C.C.

General powers of the Board are found in Section 15–51–17, North Dakota Century Code.

There are other provisions, all of which clearly indicate that it was the intent of the Legislative Assembly to give to the Board of Education powers separate and distinct from those of the City of Fargo.

The provisions of the law as originally enacted have been continued as the law of this State without substantial change since 1885, when the Act was first enacted. This law has been construed since its enactment by officials of the City, by members of the Board of Education, and by the courts as creating a· public corporation which is wholly separate and distinct from the City of Fargo. In the present case, the City of Fargo has appeared and disclaimed any right to exercise any control over the school property designated as Central High School. The record further discloses that over the years the Board of Education has sold, exchanged, and purchased property for school purposes, under the authority given it by this Act, without consulting the City of Fargo or its officials.

The plaintiff, however, contends that since the title to the property in question is held in the name of the City of Fargo, only the City may sell it, unless it is sold for school purposes. The plaintiff asserts that the specific authority given the Board is "To purchase, sell, exchange and lease houses or rooms for school purposes, lots or sites for schoolhouses, and to fence and improve them as they may deem proper; * * *" Sec. 15–51–17(2), N.D.C.C.

 Thus, the plaintiff asserts, the Board's power is limited to purchasing, selling, exchanging, or leasing houses or rooms for school purposes and lots or sites for schoolhouses; that the authority is not sufficiently broad to permit the sale of school lots or sites for any purpose other than for school purposes. Here, the proposed sale is to the County of Cass for use of the County, and therefore, asserts the plaintiff, such proposed sale is invalid since the site will not be used for school purposes.

We believe that the interpretation of the law contended for by the plaintiff is unreasonable since, under his theory, the Board of Education could not dispose of property once used for school purposes which has deteriorated to the extent that its continued use would be impractical and undesirable. The Board would have no power, if plaintiff's contentions are correct, to exchange such property at any time for other property more suitable for school purposes.

The authority of the Board of Education as conferred upon it by this law has been construed in several cases by this court. In Anderson v. City of Fargo, 48 N.D. 722, 186 N.W. 378, decided in 1922, this court pointed out that while the title to all school property in the city of Fargo vested in the City under the provisions of the Act enacted by the Territorial Legislative Assembly, the same law provided for a Board of Education for the conducting of the business of the schools. This law gave to the Board of Education exclusive control over all schools and also the right to purchase, sell, exchange, and lease houses for school purposes and lots and sites for schoolhouses.

In a later decision, Baldwin v. Board of Education of City of Fargo, 76 N.D. 51, 33 N.W.2d 473, decided in 1948, this court again held that although title to school

property was vested in the City of Fargo for the use of schools by the Special Act of the Territorial Legislature of 1885, it was the intention of the Legislature to make the Board of Education a wholly separate and distinct public corporation, separate from the municipal corporation known as the City of Fargo. In *Baldwin,* we said:

"The city of Fargo and the defendant, the Board of Education of the City of Fargo, comprise the same area and the same population, but they are corporate bodies, independent of each other, each performing different functions, discharging different duties, and exercising different powers. The defendant, the Board of Education of the City of Fargo, administers the public schools, provides and controls all properties utilized in the operation, * * * The city of Fargo has nothing to do with these activities and can exercise no control over them."

If the Board of Education controls and administers the public schools and all properties utilized in the operation of the school district, and if the City of Fargo has nothing to do with these activities, the Board of Education must be held to have the power to sell the property in question.

As pointed out earlier in this opinion, the defendant Board of Education over the years has sold, exchanged, and purchased property under the authorization given to it by Chapter 15–51, North Dakota Century Code. This was done without consulting the city officials of the City of Fargo, and with their apparent approval. The plaintiff's contention that the property in question is owned by the City of Fargo and that the City alone has the power to sell it, cannot be sustained.

■ For years, the officials of the City of Fargo and of the Board of Education have interpreted this statute as giving to the Board of Education the authority to sell school property. If, as the plaintiff asserts, this statute does not clearly give to the Board of Education the power to sell property which the Board in its discretion de-

cides is no longer needed for school purposes, the long-time interpretation of this statute by the officials of the City and of the Board of Education becomes significant. This court has held that if an Act of the Legislature is not clear, the courts will give weight to practical and contemporaneous construction placed upon such Act by officers charged with its administration. Walker v. Weilenman, 143 N.W.2d 689 (N.D.1966).

■ Furthermore, the decisions of this court in *Anderson* and in *Baldwin, supra,* are a complete answer to the plaintiff's contention that this property, held in the name of the City of Fargo, may be transferred only by the City of Fargo. The construction of a statute by the courts, supported by long acquiescence on the part of the Legislative Assembly, or by the continued use of the same language, or by failure of the Legislative Assembly to amend the law, is evidence that such construction is in accordance with the legislative intent. Portland Credit Union v. Hauge, 169 N.W.2d 106 (N.D.1969); Kline v. Landeis, 147 N.W.2d 897, 902 (N.D.1967).

We hold, therefore, that under the provisions of Chapter 15–51, North Dakota Century Code, the defendant Board of Education of the City of Fargo has the right to purchase, sell, exchange, and lease buildings, lots, or sites for school purposes; that if in the discretion of the members of the Board of Education a different site is more desirable and more adequately meets the needs of the District than the one occupied by Central High School, whether because its location has become a business district or because of the complete lack of parking facilities at the present location, or because of the outmoded condition of the present building, then the members of the Board of Education have the power, under the provisions of the statute cited, to sell the present building and establish high school facilities at a more suitable location.

■ The plaintiff asserts that the contemplated sale to the County of Cass by the Board of Education is, in any event, an

abuse of the discretion vested in the Board of Education by law. If the Board of Education has the legal authority to sell the building, as we hold it has, courts will not attempt to tell the Board how to exercise its authority. The authority to administer school affairs has been vested by the Legislature in the Board of Education. That gives to the Board certain discretion. Courts have no power to place their judgment or discretion over that of the Board. We would point out that the Board called for bids in selling the old Central High School property, which property, in the opinion of the Board, had become impractical for school purposes, making it unrealistic to repair, remodel, and use the facility for a school. The bid of Cass County was the highest bid received for the property. Thereafter, the Board, in the exercise of its discretion, determined that the bid of the County should be accepted and the property be sold to it.

Courts are slow to interfere with acts of a public body where such acts involve the exercise of discretion. Here, the Legislature has vested the Board of Education with authority to dispose of property if, in its discretion, that should be done. Courts are without power to interfere and will not interfere with the action of such a board in the absence of a clear abuse of discretion or authority by the board. The wisdom or expediency of the action taken by the board is not open to judicial review. 78 C.J.S. Schools and School Districts § 128, p. 920 *et seq.*

As we held in the comparatively recent case of Herman v. Medicine Lodge School District No. 8 (McHenry County), 71 N.W.2d 323 (N.D.1955), as a general rule, the courts will not interfere with the discretion of schools boards in the performance of their duties, except to prevent an abuse of that discretion.

For reasons stated in this opinion, the judgment of the district court is affirmed.

TEIGEN, C. J., and ERICKSTAD, PAULSON and KNUDSON, JJ., concur.